**\*\*NOT FOR PUBLICATION\*\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————— :      Civil Action No. 17-6237 (FLW)(LHG)

DARLENE DAY,                :

                                    :      **OPINION**

              Plaintiff,     :

                                      :

    v.                                  :

                                      :

WELLS FARGO & COMPANY, WELLS    :

FARGO BANK, N.A., JOHN DOE 1-10,    :

JANE ROE 1-10 and ABC           :

CORPORATION 1-10,            :

                                      :

            Defendants.    :

———————————————————— :

**WOLFSON, United States District Judge**:

      Before the Court is the motion of Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), to dismiss for failure to state a claim and as time-barred the one-count Complaint of Plaintiff Darlene Day, alleging New Jersey common law wrongful discharge under the doctrine enunciated by the New Jersey Supreme Court in *Pierce v. Ortho Pharmaceutical Corp.,* 84 *N.J.* 58, 417 *A.*2d 505 (1980) ("*Pierce*"). For the reasons set forth below, the Court finds that (i) Plaintiff's Complaint does not state a wrongful discharge claim under *Pierce* for breach of an implied provision of an employment contract and (ii) to the extent that Plaintiff's Complaint raises a wrongful discharge claim under *Pierce* under a tort theory of liability, Plaintiff's Complaint is time-barred by the applicable two-year statute of limitations. The Complaint is therefore dismissed without prejudice to the extent raised as a *Pierce* claim for breach of an implied provision of an employment contract and with prejudice to the extent raised as a *Pierce* tort claim. Plaintiff may file an Amended Complaint, consistent with this Opinion, within fifteen (15) days.

1

# I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff was employed by Wells Fargo Bank, N.A., as a financial specialist/banker at the Bank's Somerset, New Jersey location, beginning on or about December 31, 2008. Compl., ¶¶ 10-12. Plaintiff alleges that, during her employment, she became aware that Wells Fargo was engaging in practices in violation of a clear mandate of public policy, including the opening of phony accounts for consumers without their consent. *Id.* at ¶¶ 12-14. According to Plaintiff, in 2014, her store manager began to ask her to open phony accounts for consumers without their consent. *Id.* Plaintiff refused and reported the practices to at least one supervisor and to the Wells Fargo ethics hotline. *Id.* at ¶¶ 15-17. Shortly after she reported the practices, Wells Fargo issued Plaintiff three written disciplinary warnings. *Id.* at ¶ 20. The third warning, "made it clear that her termination was imminent." *Id.* at ¶ 20. Plaintiff alleges that she retired shortly after receiving the third warning, on or about August 22, 2014. *Id.* at ¶ 21.

On June 12, 2017, Plaintiff filed a Complaint against Wells Fargo in the Superior Court of New Jersey, Law Division, Middlesex County, alleging one count of common law wrongful discharge. In Count I, Plaintiff alleges that Wells Fargo retaliated against her for refusing to participate in, and for internally reporting, the opening of phony accounts for consumers without their consent. Plaintiff argues that she was therefore constructively terminated when she retired in order to avoid the certain termination threatened in the third warning she received from Wells Fargo. On August 17, 2017, Wells Fargo removed the action to this Court. On September 21, 2017, Wells Fargo moved to dismiss the Complaint, arguing that Plaintiff's Complaint fails to state a claim because Plaintiff's sole, common law wrongful discharge claim is time-barred. Plaintiff opposed the motion, which is now ripe for the Court's consideration.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In sum, under the current pleading regime, to determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within the Third Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (citations and quotations

omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citations and quotations omitted). Finally, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citations, quotations, and brackets omitted). This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

III. ANALYSIS

"Under New Jersey law, employment is presumed to be 'at will' unless an employment contract states otherwise." *Varrallo v. Hammond, Inc.*, 94 F.3d 842, 845 (3d Cir. 1996) (citing *Witkowski v. Thomas J. Lipton, Inc.*, 136 N.J. 385, 643 A.2d 546, 552–53 (1994)). *See also Witkowski*, 136 N.J. at 397 ("An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise."). An employer may fire an at-will employee "for good reason, bad reason, or no reason at all." *Id.* There are, however, legislatively and judicially created exceptions to the employment-at-will doctrine. "For example, an employer may not fire a worker for a discriminatory reason." *Id.* (citing *N.J.S.A.* 10:5-1 to -28, which prohibits discrimination on basis of race, creed, sex, age, marital status, ancestry, national origin, family status, or sexual orientation). And, most importantly for this case, in *Pierce*, the New Jersey Supreme Court declared that "an employer may not fire an employee if the 'discharge is contrary to a clear mandate of public policy.'" *Witkowski*, 136 N.J. at 397 (quoting *Pierce,* 84 *N.J.* at 73). Specifically, in *Pierce*, the New Jersey Supreme Court held that:

> An employer's right to discharge an employee at will carries a correlative duty not to discharge an employee who declines to perform an act that would require a violation of a

clear mandate of public policy. However, unless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause.

An employee who is wrongfully discharged may maintain a cause of action in contract or tort or both. An action in contract may be predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy.

An action in tort may be based on the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy. In a tort action, a court can award punitive damages to deter improper conduct in an appropriate case. That remedy is not available under the law of contract. Our holding should not be construed to preclude employees from alleging a breach of the express terms of an employment agreement.

*Pierce*, 84 N.J. at 72–73 (citations omitted).

In her Complaint in this matter, Plaintiff alleges that:

By constructively terminating Ms. Day, Wells Fargo breached the implied contractual provision governing every employer-employee relationship in New Jersey that an employer shall not terminate an employee for refusing to perform an act that violates a clear mandate of public policy.

Compl., ¶ 22. In opposition to the present motion, Plaintiff, relying upon the above quoted language from her Complaint, argues that (i) *Pierce* empowers Plaintiff to choose to bring her common law wrongful discharge claim under either a tort or contract theory; (ii) Plaintiff has elected to bring a contract action "predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy," *Pierce* 84 N.J. at 72; and (iii) because such a *Pierce* claim is a common law contract action, it is subject to a six-year statute of limitations under New Jersey law. *Lavin v. Bd. of Educ. of City of Hackensack*, 90 N.J. 145, 149, 447 A.2d 516, 518 (1982) ("The statute of limitations applicable to a 'recovery upon a contractual claim or liability' is six years." (quoting *N.J.S.A.* 2A:14–1) (emphasis removed))

Anticipating Plaintiff's *Pierce* theory of liability, Defendant Wells Fargo makes two arguments for dismissal. First, Wells Fargo contends that the applicable statute of limitations for

all *Pierce* claims for wrongful discharge, whether raised under contract or tort theories, is the two-year statute of limitations for common law tort claims. *See N.J.S.A.* 2A:14-2 ("[e]very action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued."). In support of this argument, Wells Fargo cites to two lower state court decisions, and a New Jersey Supreme Court decision upon which one of the lower court's relied. *See Montells v. Haynes*, 133 N.J. 282, 291, 627 A.2d 654, 658 (1993); *Labree v. Mobil Oil Comp.*, 300 N.J. Super. 234, 243-44 (App. Div.), *certif. denied,* 151 N.J. 465 (1997); *Kommendant v. Diocese of Trenton*, No. A-1062-08T3, 2010 WL 1526262, at *4 (N.J. Super. Ct. App. Div. Apr. 13, 2010).

Second, Wells Fargo argues that even if Plaintiff were, in the abstract, able to plead a claim for wrongful discharge under *Pierce* subject to a six-year statute of limitations, Plaintiff would nevertheless still fail to state a claim in her Complaint because she fails to allege the existence of an employment contract governing the relationship between Plaintiff and Wells Fargo into which an implied term might be read. Accordingly, Wells Fargo argues that, in the absence of a contract, the only *Pierce* claim available to Plaintiff would be under a tort theory, for which clearly established law in New Jersey provides a two-year applicable statute of limitations. In both arguments, Wells Fargo contends that Plaintiff's claim is time-barred because the Complaint in this matter was filed almost three years after the end of Plaintiff's employment.

A. Statute of Limitations Applicable to *Pierce* Tort Claim

As a threshold matter, here, there does not appear to be a dispute between the parties that New Jersey's two-year statute of limitations for tort actions should apply to a *Pierce* wrongful discharge claim brought under a tort theory of liability. *See* Opp. ECF No. 19, p. 13 ("there is no

dispute that a two-year statute of limitations applies to actions in tort."). The Court further finds that the application of a two-year statute of limitations to tort theory *Pierce* claims is supported by applicable law. New Jersey's statutory law plainly applies a two-year limitations period to common law tort claims, *N.J.S.A.* 2:14-2, and the New Jersey Supreme Court plainly identified one category of *Pierce* action as an action in tort based on an employer's breach of duty. *Pierce*, 84 N.J. at 72. Applying such a period to the facts of this case, Plaintiff's wrongful termination action accrued on August 22, 2014, the date of her alleged constructive termination by coerced retirement. *See Alderiso v. Med. Ctr. of Ocean Cty., Inc.*, 167 N.J. 191, 194, 770 A.2d 275, 277 (2001) (holding, in the related CEPA context, "that when the employer's alleged conduct consists of wrongful termination, the employee's cause of action . . . accrues on the date of actual discharge" and interpreting "that date to mean the last day for which the employee is paid a regular salary or wage"). Plaintiff's Complaint in this action was not filed until June 12, 2017, more than two years and nine months later. Accordingly, although Plaintiff appears in briefing to limit her claim to a *Pierce* contract theory, in the interest of clarity, the Court finds that Plaintiff's claim, to the extent raised under a *Pierce* tort theory of liability, is barred by the applicable two-year statute of limitations and is dismissed with prejudice.

B. Failure to State a *Pierce* Contract Claim

Turning first to Defendant Wells Fargo's second argument, although, in *Pierce*, the Supreme Court of New Jersey clearly recognized a cause of action for common law wrongful discharge sounding in contract, nothing in the decision suggests that the Court intended to create an action for breach of an implied provision of an employment contract *in the absence of a contract*. To the contrary, the law of New Jersey, as articulated by New Jersey's Supreme Court after *Pierce*, is well settled that causes of action for breach of implied contractual provisions

cannot proceed without an underlying express or implied contract. *Wade v. Kessler Inst.*, 172

N.J. 327, 345, 798 A.2d 1251, 1262 (2002) ("To the extent plaintiff contends that a breach of the

implied covenant may arise absent an express or implied contract, that contention finds no

support in our case law. In that respect, we agree with the court below that an implied contract

must be found before the jury could find that the implied covenant of good faith and fair dealing

had been breached. . . . [P]laintiff's complaint cannot include an implied covenant claim absent

an agreement.") (quotations omitted). Here, there are no allegations in the Complaint that

Plaintiff's employment with Wells Fargo was governed by an express agreement. To the extent

that Plaintiff seeks to proceed under a contract theory, therefore, any agreement must be implied.

The Supreme Court of New Jersey has recognized two types of implied contracts in

wrongful discharge actions under *Pierce*. First, a plaintiff may bring "an implied contract action

based on a company-wide policy." *Troy v. Rutgers*, 168 N.J. 354, 367, 774 A.2d 476, 483 (2001)

(citing *Woolley v. Hoffmann-La Roche,* 99 *N.J.* 284, 491 *A.*2d 1257 (1985), *modified on other

grounds,* 101 *N.J.* 10, 499 *A.*2d 515 (1985)). Second, a plaintiff may bring "an implied contract

claim that is based on representations made to a particular employee." *Id.* (citing *Shebar v. Sanyo

Bus. Sys. Corp.*, 111 N.J. 276, 288, 544 A.2d 377, 382–83 (1988)). The prototypical action of the

first variety, as embodied in *Woolley*, is for breach of an express or implied provision of an

implied employment agreement derived from the company employee handbook. *Id.* at 367-68.

The prototypical action of the second variety, as embodied by *Shebar*, is for breach of an express

or implied provision of an implied employment agreement derived from oral or written

representations by the employer to the particular employee. *Ibid.*

In this matter, Plaintiff alleges neither type of implied employment contract. Instead,

Plaintiff asserts that the duty of an employer "not [to] terminate an employee for refusing to

perform an act that violates a clear mandate of public policy" is an "implied contractual provision governing every employer-employee relationship in New Jersey." Compl., ¶ 22. There is no legal support for this position. *Pierce* simply allowed for a common law contract action where an at-will employment relationship was nevertheless governed by some express or implied contract; it did not create a new contract action in all at-will employment cases with or without an actual contract. By contrast, Plaintiff's reading requires a finding that all at-will employment arrangements in New Jersey, after *Pierce*, are governed by implied contracts, one of the implied terms of which is the duty not to terminate employees for refusing to violate mandates of public policy. This is inconsistent with all of the post-*Pierce* pronouncements of the New Jersey Supreme Court, including the unambiguous holding of *Wade* that a *Pierce* action for breach of an implied contract provision requires a prior finding of the existence of an express or implied contract. *Wade*, 172 N.J. at 345. Instead, the natural reading of *Pierce* is that, for employees whose employment is governed by an express or implied employment contract, an action for breach of an implied term of the contract is allowed; however, for at-will employees without employment contracts, a wrongful discharge action sounding in tort remains available.

In short, the Court concludes that a plaintiff cannot plead an action under the common law of New Jersey for wrongful discharge in breach of an implied term of an employment contract in the absence of an employment contract. Here, Plaintiff alleges only that she had an employment relationship with Wells Fargo, and asserts the unsupported legal conclusion that such a relationship gives rise to contractual obligations. She does not allege that her at-will employment with Wells Fargo was otherwise governed by a contract of any kind, for example one created by promises made in an employee manual, or oral promises of continued employment made by one of Plaintiff's supervisors. In the absence of a contract, Plaintiff's

*Pierce* action proceeds, if at all, only in tort. In this regard, however, the dismissal of Plaintiff's *Pierce* claim under a contract theory is without prejudice, because it is decided based upon the inadequacy of the factual pleadings, and it is not known whether Plaintiff can plead facts alleging the existence of a contract. I note my skepticism that such a claim can be pled, since Plaintiff's arguments in opposition to the present motion do not attempt to make such a claim, nor did Plaintiff amend her Complaint as of right under Fed. R. Civ. P. 15(a)(1)(B) in response to Defendant's motion, nor did she seek leave to amend under R. 15(a)(2) in order to allege a contractual basis for her claim at any time. Nonetheless, I will afford Plaintiff this one opportunity to amend her Complaint, if she can, *in good faith*, allege that an employment contract existed.

C. Statute of Limitations Applicable to a *Pierce* Contract Claim

Because I find that Plaintiff has not plausibly pleaded an underlying employment contract to support a claim for breach of an implied contractual provision under *Pierce*, I need not reach the question of which statute of limitations should apply to such a claim. Indeed, to resolve Wells Fargo's first argument in favor of dismissal would require this Court to decide a question not previously clearly answered by any New Jersey state or federal court: that the applicable statute of limitations for all *Pierce* claims for wrongful discharge, whether raised under contract or tort theories, is the two-year statute of limitations for common law tort claims. [1] I need not decide

---

[1] The Court notes that while, in briefing, Defendant Wells Fargo contends that the application of a two-year limitations period to such claims is settled law, the precedents upon which Defendant relies do not unambiguously support that proposition and are not immediately persuasive. *See, e.g.*, *Montells v. Haynes,* 133 N.J. 282, 290-91, 627 A.2d 654, 658 (1993) (finding that the public interest in the efficient prosecution of workplace discrimination claims weighed in favor of imposing a single, two-year limitations period on all wrongful discharge claims brought under the New Jersey Law Against Discrimination ("NJLAD"), which had previously been subjected to a two or six year limitations period based on ad hoc judicial evaluations of the nature of the damages sought by the plaintiff); *Shaner v. Horizon Bancorp.*, 116 N.J. 433, 452–53, 561 A.2d

that question, however, because, as explained above, Wells Fargo's second argument concerning the adequacy of the pleadings is a sufficient, alternative basis for dismissal of the Complaint.

IV. CONCLUSION

For the foregoing reasons, the Court finds (i) that Plaintiff's Complaint does not state a wrongful discharge claim under *Pierce* for breach of an implied provision of an employment contract and (ii) that to the extent that Plaintiff's Complaint raises a wrongful discharge claim under *Pierce* under a tort theory of liability, Plaintiff's Complaint is time-barred by the applicable two-year statute of limitations. The Complaint is therefore dismissed without prejudice to the extent raised as a *Pierce* claim for breach of an implied provision of an employment contract and with prejudice to the extent raised as a *Pierce* tort claim. Plaintiff may file an Amended Complaint, consistent with this Opinion, within fifteen (15) days. An appropriate Order to follow.


Date:   April 20, 2018                                         _____*/s/ Freda L. Wolfson*_____
                                                                            FREDA L. WOLFSON, U.S.D.J.

---

1130, 1140 (1989), *superseded by statute on other grounds* (finding, in the context of *Pierce* wrongful discharge claims, that "the LAD cause of action does not either codify or co-opt these common-law causes of action" and that "LAD claims do not supplant claims that might be cognizable by our courts *in contract* or tort for wrongful discharge from employment." (emphasis added)); *Labree v. Mobil Oil Corp.*, 300 N.J. Super. 234, 242-43, 692 A.2d 540, 544-45 (App. Div. 1997) *(*addressing whether the two-year statute of limitations set forth under the New Jersey Workers' Compensation Act, *N.J.S.A.* 34:15-41, should be extended to common law wrongful discharge claims based on alleged retaliation by an employer against an employee for the exercise of rights protected by the Act); *Kommendant v. Diocese of Trenton*, No. A-1062-08T3, 2010 WL 1526262, at *5 (N.J. Super. Ct. App. Div. Apr. 13, 2010) (not addressing the application of the two or six-year statute of limitations because, pursuant to the date calculation rules of *R.* 1:3–1, the plaintiff's complaint was timely even within the shorter, two-year period). Plaintiff has cited no law in favor of the application of a six-year limitations period, other than the general language in *Pierce* itself authorizing contract actions.